UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CR-20604-ALTONAGA

UNITED STATES OF AMERICA,

vs.

LUIS EDUARDO CARVAJAL PEREZ,

_____/

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Luis Carvajal, through his undersigned counsel, files his sentencing memorandum and moves the Court for a downward variance. In support thereof, states the following:

### *Introduction*

Mr. Carvajal is a prime candidate for an exercise of this Court's sentencing discretion. While the plea agreement and Pre-Sentence Investigation Report ("PSI") have mechanized a sentence based upon drug quantity, they fail to capture important considerations we urge the Court to weigh under § 3553(a). Mr. Carvajal made his desire to accept responsibility known to the government long before being extradited and he has cooperated with agents from this district (and another) with candor. The context of the obstruction of justice component of his case also warrants clarification in our quest for a sentence below the applicable sentencing guideline range.

### **Cooperation**

Long before his extradition, Mr. Carvajal made it known to the Government he wanted to accept full responsibility for his role in the case and that he intended to

cooperate in any way he could. After his extradition, Mr. Carvajal was debriefed by his local case agents several times as well as by agents and prosecutors from another district. Mr. Carvajal has been open, sincere, and completely willing to engage with the Government. Notwithstanding his good faith, because his extradition took over four years, the information he has provided is almost entirely historical and beyond the statute of limitations, which has rendered his chances of receiving a Rule 35(b) motion for reduction of sentence speculative, at best. To date, nothing concrete has happened that would give any degree of certainty, or even an expectation, of receiving a benefit for his cooperation. We urge the Court to take this effort into account in fashioning an appropriate sentence.

**The Nature and Circumstances of the Offense**

The circumstances of Mr. Carvajal's role in the obstruction of justice component of his case are ripe for clarification. As more fully discussed below, Mr. Carvajal did not seek out the individuals who sought to avoid extradition; he did not ask for compensation; he told them he did not have any power to help them avoid extradition; and, finally, none of the three individuals who sought to avoid extradition were charged with obstruction or enhanced with it. In sum, Mr. Carvajal was approached by three people looking to avoid extradition (two being from this case) and he referred them to someone else. While Mr. Carvajal completely accepts responsibility for his involvement in the obstruction of justice, the circumstances fairly lend themselves to a downward variance.

**The History and Characteristics of Mr. Carvajal**

Luis Carvajal is a 59-year-old loving father and first-time offender. He has fully

and completely accepted responsibility for his actions and has taken clear steps to right his wrongs by aiding the Government to the full extent possible.

Mr. Carvajal was arrested on July 3, 2018, just six months prior to the initial proliferation of the Covid virus, which has meant he has spent the entirety of the pandemic in a high-risk environment. Even before the pandemic became a presence in the prison system, La Pictoa prison in Bogota, Colombia was known to have a dubious human rights track record. We ask the Court to weigh both the fact that Mr. Carvajal has spent the entirety of the Covid pandemic in confinement, as well as the fact that he spent over four years in inhospitable conditions while awaiting extradition.

### *Section 3553(a) Factors Applied to This Case*
a) **Cooperation**

As mentioned above, Mr. Carvajal made it known to the Government very early on that he intended to plead guilty and cooperate. Immediately after his extradition, local case agents interviewed Mr. Carvajal and found him honest and true. On the basis of a good first impression, agents and prosecutors from another district debriefed Mr. Carvajal in relation to a defendant pending trial in that district. While the information was useful, those out-of-district prosecutors indicated they only intended to share Mr. Carvajal's interview report with their defendant if he persisted in his right to a trial. In other words, although Mr. Carvajal's information was useful and probative, his chances of his interview report being shared (thereby earning clear cooperation credit), is extremely remote.

And while Mr. Carvajal has continued to cooperate, there is no present expectation that anything proffered in the course of his debriefs will lead to a tangible

benefit for the Government. Because of that, there is a strong likelihood that the sentence pronounced by the Court at sentencing will be Mr. Carvajal's final sentence, notwithstanding his honest, long-standing commitment to cooperate and accept responsibility.

Although the Government is the only party that can file a motion pursuant to §5K1.1, the Court is free to issue a variance based on a defendant's extreme remorse, acceptance of responsibility, and cooperation. *United States v. Knox*, 573 F.3d 441 (7th Cir. 2009) (holding that as a general matter a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a §5K1.1 motion); *United States v. Martinez-Munguia*, 268 Fed. Appx. 472, at *1 (7th Cir. 2008) (unpublished opinion) (holding that the district court judge properly understood his discretion to reduce the defendant's sentence due to substantial cooperation in the absence of a §5K1.1 motion from the prosecutors, though he elected not to grant such a reduction)*; United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006) (finding that a district court should consider the contention that a defendant made efforts to cooperate, even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. §5K1.1"); *United States v. Laufle*, 433 F.3d 981, 987 (7th Cir. 2006) (Departures aside, the nature and degree of [a defendant's] assistance to the government is of course a relevant sentencing factor…)*; United States v. Doe*, 398 F.3d 1254, 1260-61 (10th Cir. 2005) (concluding that a defendant's assistance should be fully considered by a district court at sentencing even if that assistance is not presented to the court in the form of a §5K1.1 motion); *United States v. Bullock*, 2009

WL 3667094, *3 (E.D. Wis. 2009) (district court acknowledges that it can consider attempts at cooperation under 3553(a) even if the government does not file a §5K1.1).

Additionally, the Supreme Court has explained that evidence of post-offense rehabilitation is relevant under the 3553 factors. *Pepper v. United States*, 131 S.Ct. 1229 (2011) (explaining that a district court may consider a defendant's attempts at rehabilitation even after sentencing and that no limitation be placed on the types of information a judge should consider about the background, character, and conduct of the defendant).

We ask the Court to take Mr. Carvajal's sincere efforts to accept responsibility and cooperate into account in weighing his request for a downward variance.

**b) The Nature and Circumstances of the Offense**

We next ask the Court to consider Mr. Carvajal's role within the nature and circumstances of the offense in our request for a downward variance. In ¶10 of the PSI, Mr. Carvajal's role is described as being part of the FARC taxation structure for the Tumaco region of Colombia. Mr. Carvajal did not set the prices of taxes, nor did they flow to him in a personal capacity. He would receive money and then pass it along to higher ups in the organization.

Of the five drug loads at the heart of this Indictment, discussed in PSI ¶s 11-28, Mr. Carvajal is not named in a single one. More to the point, ¶30 of the PSI says Mr. Carvajal is responsible for 1,000 kilos of cocaine, one of the lowest quantities in the case.

With respect to the obstruction of justice count discussed in ¶29 of the PSI, it bears repeating that Mr. Carvajal did not seek out the individuals looking to avoid

extradition – Polivio Rosero Mera, Luis Jillon Romo, and Washington Prado Alava. To the contrary, these individuals approached Mr. Carvajal. Mr. Carvajal's response was straightforward – he did not have the power or authority to do what they were asking. Instead, he referred the interested parties to speak with other individuals who could perhaps be more useful. Again, Mr. Carvajal did not ask for any money or compensation for being an intermediary.

Two of the individuals seeking to avoid extradition are co-defendants, Polivio Rosero Mera and Luis Jilon Romo. Not only were neither one of those individuals charged with obstruction, both received downward variances when, arguably, as the people trying to avoid extradition, they should have been charged if Mr. Carvajal was charged as a disinterested third party. What is more, the PSI recommended a three-level leadership enhancement for Rosero Mera and a two-level enhancement for Jilon Romo. *See* PSI ¶s 35 and 36. Both co-defendants were initially held responsible for a higher drug quantity; however, the Court found at sentencing that Mr. Jilon was only responsible for between 150-450 kilos of cocaine. Rosero Mera was sentenced to 156 months and Jilon Romo was sentenced to 80 months, tremendous downward variances for both defendants.

If culpability were reduced to drug quantity numbers reflected in the PSI, Mr. Carvajal would be at the low-end of the spectrum. We are hopeful Mr. Carvajal's relatively small role in the offense, coupled with his passive involvement in the attempted obstruction of justice (which was being marshalled by others who were not charged or penalized), leads this Court to the conclusion that a downward variance is appropriate in this instance.

### c) The History and Characteristics of Luis Carvajal

Mr. Carvajal's history and characteristics should hold weight in his request for a downward variance. While the Guidelines compute an advisory sentence based upon drug quantity, they give no weight to the history and characteristics of the defendant, which Congress has instructed the sentencing court to consider, **equally**, with the nature and circumstances of the offense.[1,2]

Growing up in rural Tolima, a part of Southwest Colombia marked by dense rainforests and mountainous terrain, Mr. Carvajal was raised by with his siblings on a government subsidized farming plot. Mr. Carvajal and his family lived without the benefit of running water or electricity. Consistent with an impoverished upbringing, Mr. Carvajal was afforded only a brief stint in school from 8-12 years of age. At 12, he was expected to work and farm to help support his family.

It was a Saturday evening that Mr. Carvajal's father asked him, a 15-year-old adolescent, to take their horse to a neighbor to have new shoes fitted. While casually walking the horse down the road, Mr. Carvajal was stopped by a group of Colombian Army soldiers. The soldiers were patrolling the area as part of the ongoing civil war with the FARC. For whatever reason, these soldiers decided to kidnap Mr. Carvajal and torture him for information about local FARC activities. The soldiers took Mr. Carvajal to a barn and tied him up. While he was first beaten, kicked, and punched,

---

[1] *See Rita v. United States*, 551 U.S. 338, 364-65 (2007) (The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines.

[2] S*ee also United States v. Prosperi,* 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to 6 months of home detention because the loss numbers did not take into account the personal characteristics of the defendant)

the true torment occurred when he was hoisted up by his arms while tied behind his back, thereby breaking one of his clavicles and dislocating a shoulder. As if that abuse was not enough, the soldiers then shoved needles underneath his fingernails in their misguided search for information. The torture lasted much of the evening and into the morning hours. Fortunately, however, the soldiers stopped short of killing Mr. Carvajal, who the released the next day. His father immediately took him to see a doctor for urgent care. Mr. Carvajal still suffers shoulder pain from that injury.

Understandably, Mr. Carvajal was scarred from this experience, which later compelled him to join the local FARC resistance. He ultimately came to renounce the organization during the peace process in 2017. Since arrest, Mr. Carvajal has returned to where he left life in his youth, studying and learning to read and write. During the more than four years spent awaiting extradition, Mr. Carvajal made significant headway on his high school diploma, which he intends to earn soon. He has no interest in the organization, its tenets, or its political future. Mr. Carvajal has closed this chapter of his life and wants nothing more than peace and harmony for all.

As articulated at the outset of this memo, Mr. Carvajal has endured substantial hardship during the course of his incarceration due to the Covid pandemic. While incarceration is not by design enjoyable, it should not be akin to unending confinement, either. Just like the Bureau of Prisons acted in the United States, the Colombian prison system INPEC imposed similar restrictions of movement and visitation, which resulted in inmates spending 23-hours per day in tight confinement, or more, for not just days or weeks, but years on end. The measures

taken to try and prevent the virus from spreading – while noble – effectively transformed all inmates into super-max inmates or rule violators serving additional punishment in the SHU. Quite the opposite, Mr. Carvajal has been a model inmate in both Colombia and the United States.

Finally, we urge the Court to consider a downward variance based on the arduous conditions of La Picota prison in Colombia. Inmates routinely complain of soiled food, overcrowding, lack of medical care, and extortion by staff. An article from Colombian press within the past week discusses inmates reporting maggots in their food.3

Consistent with the holdings in *United States v. Pressley*, 345 F. 3d 1205 (11th Cir. 2000), *United States v. Mateo*, 299 F. Supp 201 (S.D.N.Y.2004), and *United States v. Carty*, 264 F.3rd 191 (2nd Cir.2001), which allow this Court to use its discretion to depart on the basis of harsh conditions of presentence confinement, we ask the Court find both the conditions and circumstances of Mr. Carvajal's presentence confinement warrant a downward variance.

*Conclusion*

Mr. Carvajal has been in custody since July 3, 2018. Since that time, he has accepted responsibility and done everything within his control to make amends for his involvement in this case. Owing to his early acceptance, forthright effort to cooperate, and the lack of parity amongst the individuals that relate to the obstruction component, we respectfully submit a downward variance is appropriate

---

3 https://www.rcnradio.com/colombia/defensoria-pide-velar-por-los-derechos-humanos-de-detenidos-en-carceles-del-pais

in this case.

        Respectfully submitted,

        **MARKUS/MOSS PLLC**
        40 N.W. Third Street, PH1
        Miami, Florida 33128
        Tel: (305) 379-6667
        Fax: (305) 379-6668
        markuslaw.com

By:    /s/ Todd Yoder
        Todd C. Yoder
        Florida Bar Number 71263
        tyoder@markuslaw.com